UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENEVIEVE HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil Action No. 3:13-cv-00378-JBA |

LOCAL RULE 56(a)(1) STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a)(1), Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby makes the following statement of material facts as to which no genuine issue remains to be tried.

1. On or about December 31, 2007, Plaintiff Genevieve Henderson ("Plaintiff") refinanced an existing mortgage loan on her home located at 22 Lake Road, Middlefield, Connecticut (the "Property") by executing a promissory note (the "Note") to Wachovia Mortgage Corporation ("Wachovia") in the principal amount of $180,000. See Affidavit of Richard L. Penno ("Penno Aff."), ¶ 5; Penno Aff. Exhibit A-1, *Note*; Counsel's Affidavit ("Counsel's Aff.") Exhibit B-1, *Henderson Deposition Transcript*, 74:16-76:15, 82:11-15.

2. To secure repayment of the Note, Plaintiff granted Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Wachovia and Wachovia's successors and assigns, a mortgage (the "Mortgage," together with the Note, the

"Mortgage Loan" or "Loan") on the Property. See Penno Aff., ¶ 6; Penno Aff. Exhibit A-2, *Mortgage*; Counsel's Aff., Ex. B-1, 78:19-81:12.

3. On September 29, 2009, Wells Fargo notified Plaintiff that it had acquired Wachovia and that, beginning October 16, 2009, Wells Fargo would service the Mortgage Loan. See Penno Aff., ¶ 7; Penno Aff. Exhibit A-3, *September 29, 2009 Transfer Letter*.

4. On October 16, 2009, Wachovia transferred the Note to Wells Fargo. See Counsel's Aff. Exhibit B-7, *Affidavit of Alisha Mulder*, ¶ 3.

5. Wells Fargo, through its custodian and control, has retained and continues to retain possession of the original copy of the Note since October 16, 2009, and is entitled to enforce the Mortgage securing the debt. See Counsel's Aff. Ex. B-7, ¶ 4

6. Plaintiff alleges that she called Wells Fargo in February or March 2010 to inquire about a reverse mortgage or a loan modification because she could no longer afford her monthly payments. See Counsel's Aff. Ex. B-1, 94:9-24, 109:2-21.

7. Wells Fargo did not contact or solicit Plaintiff to inquire about or apply for a HAMP loan modification — Plaintiff initiated contact with Wells Fargo. See Counsel's Aff. Ex. B-1, 96:5-97:13.

8. When Plaintiff allegedly contacted Wells Fargo in February or March 2010, she did not have any tenants in her in-law apartment paying rental income. See Counsel's Aff. Ex. B-1, 97:22-25, 99:1-17.

9. During this time, Plaintiff also requested a payoff statement from Wells Fargo so that she could explore refinance options with other lenders. See Penno Aff., ¶ 8; Penno Aff. Exhibit A-4, *Wells Fargo Notes*, WF/Henderson001100-001101.

10. In April 2010, Wells Fargo provided Plaintiff with a payoff statement, however, she informed Wells Fargo that she was not able to obtain any refinancing because her debt to income ratio was too high. See Penno Aff., ¶ 9; Penno Aff. Ex. A-4, WF/Henderson001098-001099.

11. Plaintiff has never submitted an application to Wells Fargo for a reverse mortgage. See CCounsel's Aff. Ex. B-1, 101:22-102:4, 166:13-16, 167:11-13; Counsel's Aff. Exhibit B-3, *Wells Fargo's First Request for Admissions to Plaintiff*, No. 16; Counsel's Aff. Exhibit B-4, *Plaintiff's Responses to Wells Fargo's Interrogatories and Request for Admissions*, p. 9, No. 16.

12. Notwithstanding her attempts to refinance, Plaintiff defaulted on the Mortgage Loan in March 2010 after failing to make the required monthly mortgage payment. See Penno Aff., ¶ 11; Counsel's Aff. Ex. B-3, No. 1; Counsel's Aff. Ex. B-4, p. 8, No. 1; Counsel's Aff. Exhibit B-5, *Wells Fargo's Answers to Plaintiff's Interrogatories*, No. 9.

13. Plaintiff also failed to make the required monthly payment on the Mortgage Loan in April 2010. See Penno Aff., ¶ 12; Counsel's Aff. Ex. B-1, 114:14-15; Counsel's Aff. Ex. B-3, No. 8; Counsel's Aff. Ex. B-4, p. 8, No. 8.

14. Plaintiff has not made a full monthly payment on the Mortgage Loan, or cured the default, since the payment due for March 2010. See Penno Aff., ¶ 12; Counsel's Aff. Ex. B-3, No. 8-12; Counsel's Aff. Ex. B-4, p. 8, No. 8-12.

15. Wells Fargo did not instruct or advise Plaintiff to cease making payments on the Mortgage Loan. See Counsel's Aff. Ex. B-1, 109:4-14.

16. As a result of the default, Wells Fargo sent Plaintiff an acceleration notification dated April 18, 2010 that informed her that the Mortgage Loan was in default for failure to make the required payments and that unless she paid the total amount due on the loan — $3,579.66 — Wells Fargo would accelerate the Loan. See Penno Aff., ¶ 13; Penno Aff. Exhibit A-5, *April 2010 Acceleration Notification*.

17. Despite sending Plaintiff the acceleration notification indicating that she needed to pay the total amount due on the Loan, Plaintiff attempted to make the May 2010 payment to avoid foreclosure. See Penno Aff., ¶ 14; Counsel's Aff. Ex. B-1, 139:20-22.

18. When Plaintiff attempted to make the May 2010 payment, Wells Fargo explained to Plaintiff it could not accept a partial payment because, in light of her non-payment, Plaintiff was required to pay the total amount necessary to bring the loan current. See Penno Aff., ¶ 15; Penno Aff. Ex. A-4, WF/Henderson001096-001097; Penno Aff. Exhibit A-6, *June 2010 Default Letter*; Counsel's Aff. Ex. B-1, 131:18-132:7, 141:11-25; Counsel's Aff. Ex. B-3, No. 6; Counsel's Aff. Ex. B-4, p. 8, No. 6.

19. In May 2010, Plaintiff failed to cure the default and avoid foreclosure. See Penno Aff., ¶ 12; Counsel's Aff. Ex. B-1, 142:1-3; Counsel's Aff. Ex. B-3, No. 8; Counsel's Aff. Ex. B-4, p. 8, No. 8.

20. In March 2010, Wells Fargo also informed Plaintiff that it could review her for a HAMP loan modification. See Penno Aff., ¶ 10; Penno Aff. Ex. A-4, WF/Henderson001100; Counsel's Aff. Ex. B-1, 102:25-103:8, 109:18-110:4.

21. Wells Fargo did not, however, guarantee or promise Plaintiff that she would be eligible for, qualify for, or receive a loan modification. See Counsel's Aff. Ex. B-1, 135:14-136:9.

22. In May 2010, Wells Fargo initiated loss mitigation and began to review Plaintiff for a HAMP loan modification. See Penno Aff., ¶ 16; Penno Aff. Ex. A-4, WF/Henderson001098; Counsel's Aff. Ex. B-5, No. 9.

23. On July 21, 2010, Wells Fargo sent Plaintiff a letter requesting additional information to complete the loan modification review, including, but not limited to, a copy of Plaintiff's 2008 tax return, an extension of her 2009 tax return, and a copy of benefits letters for her social security and pension. See Penno Aff., ¶ 17; Penno Aff. Exhibit A-7, *July 2010 Request for Documents Letter*.

24. On July 30, 2010, Wells Fargo called Plaintiff to follow up on its document request because it had not received the requested documents. See Penno Aff., ¶ 18; Penno Aff. Ex. A-4, WF/Henderson001771.

25. During the call, Plaintiff informed Wells Fargo that she could not provide copies of her taxes because she had not filed taxes during the past few years. See Penno Aff., ¶ 19; Penno Aff. Ex. A-4, WF/Henderson001771.

26. Wells Fargo advised Plaintiff that to qualify for a HAMP loan modification, she was required to have filed her taxes. Id.

27. As a result, on August 4, 2010, Wells Fargo denied Plaintiff's request for a HAMP loan modification because she did not provide Wells Fargo with the documents required to complete the modification review. See Penno Aff., ¶ 20; Penno Aff. Exhibit A-8, *August 4, 2010 HAMP Denial Letter*; Counsel's Aff. Ex. B-5, No. 4, 9.

28. Wells Fargo sent Plaintiff a letter dated August 4, 2010 informing her of the HAMP modification denial. See Penno Aff., ¶ 20; Penno Aff. Ex. A-8; Counsel's Aff. Ex. B-1, 152:22-153:3; Counsel's Aff. Ex. B-5, No. 4, 9.

29. Two days later, on August 6, 2010, Wells Fargo initiated a foreclosure action against Plaintiff in state court, docket no. MMX-CV10-6003273-S, because Plaintiff had not entered into a modification agreement or cured the default on the Mortgage Loan (the "Foreclosure Action"). See Penno Aff., ¶ 21; Counsel's Aff. Ex. B-5, No. 9; Counsel's Aff. Exhibit B-8, *Complaint*; Counsel's Aff. Exhibit B-9, *Docket*.

30. The Foreclosure Action remains pending to this date. See Counsel's Aff. ¶ 4, Counsel's Aff. Ex. B-9; see also Penno Aff. ¶¶ 16-21, 23-24, 32-41.

31. As part of the Foreclosure Action, Wells Fargo participated in the Connecticut State Court Foreclosure Mediation Program ("State Court Mediation") with Plaintiff, as required under Conn. Gen. Stat. §§ 49-31K to 49-31o, to attempt to resolve the Foreclosure Action before it went to judgment. See Counsel's Aff. Ex. B-1, 177:17-178:1; Counsel's Aff. Ex. B-5, No. 9; Counsel's Aff. Ex. B-9, DN 100-108.

32. Plaintiff and Wells Fargo attended and participated in several mediation sessions between September 2010 and May 2010 during which they actively negotiated potential settlement options including, but not limited to, considering Plaintiff for a HAMP loan modification or other non-HAMP options. See Counsel's Aff. Ex. B-1, 178:2-180:13; Counsel's Aff. Ex. B-5, No. 9; Counsel's Aff. Ex. B-9.

33. On March 9, 2011, while Plaintiff and Wells Fargo were engaged in ongoing settlement discussions, Wells Fargo provided Plaintiff with the telephone

number for its reverse mortgage department after Plaintiff informed it that she was unable to refinance her loan. See Counsel's Aff. Ex. B-5, No. 1.

34. Plaintiff did not submit an application for a reverse mortgage with Wells Fargo. See Counsel's Aff. Ex. B-1, 188:2-4.

35. Wells Fargo did not contact Plaintiff in early 2011 to inform her to leave the State Court Mediation because it had all the paperwork it needed to review Plaintiff for a loan modification and that the review was in underwriting. See Penno Aff., ¶ 22.

36. On May 10, 2011, the mediator filed a final report in the Foreclosure Action stating that the mediation was terminated, and the case was not settled, because Plaintiff "has not submitted a complete financial package to [Wells Fargo] thru the mediation process. [Plaintiff] has been given extensive instructions and directions to complete the financial package. Mediator has made additional time outside of mediation to assist [Plaintiff] with completing the financial package." See Counsel's Aff. Exhibit B-10, *Final Mediator's Report*.

37. During mediation, Wells Fargo reviewed Plaintiff for a HAMP loan modification, however, Plaintiff did not qualify because Wells Fargo was unable to create an affordable payment equal to 31% of Plaintiff's reported monthly gross income without changing the terms of Plaintiff's loan beyond the requirements of the HAMP program. See Penno Aff., ¶ 23; Penno Aff. Exhibit A-9, *May 16, 2011 HAMP Denial Letter*; Counsel's Aff. Ex. B-5, No. 4.

38. Wells Fargo informed Plaintiff of the HAMP loan modification denial by a letter dated May 16, 2011. See Id.

39. As a result of the settlement negotiations, Wells Fargo offered Plaintiff a temporary Special Forbearance Agreement (the "Forbearance Agreement") on June 16, 2011. See Penno Aff., ¶ 24; Penno Aff. Exhibit A-10, *Signed Forbearance Agreement*; Counsel's Aff. Ex. B-1, 188:23-189:2; Counsel's Aff. Ex. B-5, No. 9.

40. The Forbearance Agreement was sent to Plaintiff in a three-page packet, which included a cover letter with instructions. See Penno Aff., ¶ 25; Penno Aff. Ex. A-10.

41. The Forbearance Agreement required Plaintiff to make four monthly payments — three payments of $304.11 and a fourth payment of $47,556.82. See Penno Aff., ¶ 26; Penno Aff. Ex. A-10, p. 3; Counsel's Aff. Ex. B-3, No. 24; Counsel's Aff. Ex. B-4, p. 9, No. 24.

42. Subject to Plaintiff's performance under the Agreement, Wells Fargo agreed that it would review "[a]ny outstanding payments and fees … for a loan modification." See Penno Aff. Ex. A-10, p. 3; Counsel's Aff. Ex. B-5, No. 9.

43. The Forbearance Agreement explicitly stated that Wells Fargo was "under no obligation to enter into any further agreement." Id.

44. The cover letter further explained that "[u]pon successful completion of the Plan, your loan will not be contractually current … Any outstanding payments and fees will be reviewed for a loan modification. If approved for a loan modification, based on investor guidelines, this will satisfy the remaining past due payments on your loan and we will send you a loan modification agreement." See Penno Aff. Ex. A-10, p. 1.

45. Upon receipt of the Forbearance Agreement, Plaintiff had the opportunity to read the entire agreement, which included all three-pages of the Forbearance Agreement package. See Counsel's Aff. Ex. B-1, 212:19-25.

46. Plaintiff signed and returned the Forbearance Agreement to Wells Fargo on June 27, 2011. See Penno Aff., ¶ 27; Penno Aff. Ex. A-10; Counsel's Aff. Ex. B-1, 193:2-10.

47. In addition to Plaintiff's signature on the Forbearance Agreement, Plaintiff included handwritten notes on pages 1 and 3 of the Agreement that noted the Agreement was "sent certified mail return receipt" and that Plaintiff "enclosed [her] 1st installment of $304.11 (ck # 1093) due July 15, 2011 as set forth on Page 1, Paragraph 2 of this Agreement." See Penno Aff., ¶ 28; Penno Aff. Ex. A-10; Counsel's Aff. Ex. B-1, 190:22-191:5, 193:11-194:19.

48. Plaintiff made the first three payments of $304.11 for July, August and September 2011 as required under the Forbearance Agreement. See Penno Aff., ¶ 29; Counsel's Aff. Ex. B-1, 213:3-5; Counsel's Aff. Ex. B-3, No. 26; Counsel's Aff. Ex. B-4, p. 9, No. 26; Counsel's Aff. Ex. B-5, No. 9.

49. Plaintiff did not make the fourth payment of $47,556.82 in October 2011 as required under the Forbearance Agreement. See Penno Aff., ¶ 30; Counsel's Aff. Ex. B-1, 213:6-9; Counsel's Aff. Ex. B-5, No. 9.

50. Wells Fargo does not have any evidence in its records of an original or copy of a signed 3-payment agreement or that Wells Fargo offers or discussed with Plaintiff a 3-payment agreement. See Penno Aff., ¶ 31.

51. Notwithstanding Plaintiff's failed performance under the Forbearance Agreement, Wells Fargo reviewed Plaintiff for a HAMP loan modification, beginning in October 2011, to help Plaintiff avoid foreclosure. See Penno Aff., ¶ 32; Counsel's Aff. Ex. B-5, No. 9.

52. During the HAMP loan modification review process, Wells Fargo sent Plaintiff five letters requesting documents, which Plaintiff failed to provide, to verify and confirm Plaintiff's income and the alleged rent to complete the HAMP loan modification review process. See Penno Aff., ¶¶ 33-37; Penno Aff. Exhibit A-11, *Oct. 21, 2011 Letter*; Exhibit A-12, *Nov. 7, 2011 Letter*; Exhibit A-13, *Dec. 14, 2011 Letter*; Exhibit A-14, *Feb. 8, 2012 Letter*; Exhibit A-15, *Mar. 9, 2012 Letter*.

53. Wells Fargo sent Plaintiff the first letter dated October 21, 2011 requesting additional documents to complete the HAMP loan modification review including, but not limited to, a signed IRS Form 4506T (a request for a transcript of tax returns), documents to verify Plaintiff's income (three bank statement to serve as proof of receipt of rental and social security income), proof of occupancy of Plaintiff's tenant, and a signed Request for Modification Aff.. See Penno Aff., ¶ 33; Penno Aff. Ex. A-11; Counsel's Aff. Ex. B-1, 214:11-216:6.

54. Marlene is Plaintiff's daughter-in-law who lived in Plaintiff's in-law apartment on several different occasions and paid Plaintiff rental income, however, Marlene did not have a written lease with Plaintiff. See Counsel's Aff. Ex. B-1, 223:18-224:5.

55. Plaintiff, however, does not recall when Marlene rented the apartment, the amount of rent Marlene paid, or the number of times Marlene paid Plaintiff rent. See Counsel's Aff. Ex. B-1, 224:9-16.

56. Wells Fargo sent Plaintiff a second letter dated November 7, 2011 requesting additional documents to complete the loan modification review, including, but not limited to, a signed IRS Form 4506T, documents to verify Plaintiff's income (copy of pension award letter, bank statements to show receipt of rental income and pension for August, and a profit/loss statement for self-employment income). See Penno Aff., ¶ 34; Penno Aff. Ex. A-12; Counsel's Aff. Ex. B-1, 216:11-217:16, 217:7-9.

57. Wells Fargo sent Plaintiff a third letter dated December 14, 2011 requesting additional information to complete the loan modification review, including, but not limited to, Plaintiff's 2010 tax returns, and a signed and dated contribution letter from Plaintiff's tenant. See Penno Aff., ¶ 35; Penno Aff. Ex. A-13; Counsel's Aff. Ex. B-1, 221:8-25.

58. Wells Fargo sent Plaintiff a fourth letter dated February 8, 2012 requesting additional documentation to complete the loan modification review, including, but not limited to, a copy of the IRS Form 4506T for Plaintiff and her tenant, Marlene and a contribution letter with a guaranteed amount of contribution. See Penno Aff., ¶ 36; Penno Aff. Ex. A-14; Counsel's Aff. Ex. B-1, 223:10-25.

59. Wells Fargo sent Plaintiff a final letter dated March 9, 2012 requesting additional documentation to complete the modification review, including, but not limited to, a copy of the IRS Form 4506T for Plaintiff's tenant, Marlene, and a corrected

contribution letter from Marlene. See Penno Aff., ¶ 37; Penno Aff. Ex. A-15; Counsel's Aff. Ex. B-1, 225:10-226:7.

60. At some point during this HAMP loan modification review process, Plaintiff chose to stop reading letters from Wells Fargo. See Counsel's Aff. Ex. B-1, 222:10-223:6.

61. On March 22, 2012, Plaintiff informed Wells Fargo that her tenant, Marlene, refused to provide Wells Fargo the documentation it required to assess Marlene's rental payments and contributions to Plaintiff, which Wells Fargo required to complete the HAMP loan modification review. See Counsel's Aff. Ex. B-1, 227:6-228:8, 228:24-229:2, 232:3-15.

62. As a result, by a letter dated March 28, 2012, more than five months after the review process began, Wells Fargo informed Plaintiff that she did not qualify for a HAMP loan modification because she did not provide Wells Fargo with the documents necessary to complete the loan modification review process and Wells Fargo was not able to reach Plaintiff to discuss the review. See Penno Aff., ¶ 38; Penno Aff. Ex. A-16; Counsel's Aff. Ex. B-1, 231:4-7; Counsel's Aff. Ex. B-5, No. 4.

63. After the March 28, 2012 HAMP loan modification denial, Wells Fargo reviewed Plaintiff for a loan modification on a least two additional occasions. See Penno Aff., ¶¶ 39-40; Penno Aff. Exhibit A-17, *June 2012 HAMP Denial Letter*, Penno Aff. Exhibit A-18, *July 2012 HAMP Denial Letter*; Counsel's Aff. Ex. B-5, No. 4.

64. By a letter dated June 12, 2012, Wells Fargo denied Plaintiff for a HAMP loan modification because it was unable to create an affordable payment equal to 31% of Plaintiff's reported monthly gross income without changing the terms of Plaintiff's loan

beyond the requirements of the HAMP Program. See Penno Aff., ¶ 39; Penno Aff. Ex. A-17; Counsel's Aff. Ex. B-5, No. 4.

65. By a letter dated July 30, 2012, Wells Fargo denied Plaintiff for a Non-HAMP workout option because the investor declined to modify the Mortgage. See Penno Aff., ¶ 40; Penno Aff. Ex. A-17; Counsel's Aff. Ex. B-5, No. 4.

66. Since Plaintiff's default in March 2010, Wells Fargo has reviewed Plaintiff for a HAMP loan modification on at least four separate occasions and a non-HAMP workout option on at least three separate occasions. See Counsel's Aff. Ex. B-5, No. 4.

67. With the exception of the non-HAMP review that resulted in the Forbearance Agreement, Plaintiff failed to qualify for any other HAMP or non-HAMP loan modifications. Id.

68. During each HAMP loan modification or Non-HAMP workout option review, Wells Fargo required Plaintiff to submit updated financial information regarding herself and any contributors such as tenants. See Penno Aff., ¶ 41.

69. Plaintiff has not itemized, stated, or described any compensatory damages resulting from the allegations in the Complaint." See Counsel's Aff. Ex. Ex. B-2, No. 21; Counsel's Aff. Ex. B-4, p. 5, No. 21.

70. Plaintiff did not produce any documents related to her emotional distress or physical pain and suffering. See Counsel's Aff. Ex. B-1, 262:24-263:1; Counsel's Aff Ex. B-6, No. 21, 22; Counsel's Aff. ¶ 8.

71. Plaintiff has not sought medical treatment for mental, emotional, or physical pain and suffering resulting from the Foreclosure Action or the allegations set forth in the Complaint. See Counsel's Aff. Ex. B-1, 264:11-18, 263:2-6.

72. Plaintiff does not have any actual knowledge of how and when her in-law apartment was rented or how much rent was collected because her sons handled the rent. See Counsel's Aff. Ex. B-1, 224:19-21..

73. Plaintiff did not produce any evidence to establish the fair rental value of the in-law apartment. See Counsel's Aff. Ex. B-6, No. 20; Counsel's Aff. ¶ 8.

74. Plaintiff did not produce any documentary evidence, such as a lease agreement, to establish that Plaintiff had tenants in her in-law rental unit prior to the commencement of the foreclosure action. See Counsel's Aff. Ex. B-6, No. 20; Counsel's Aff. ¶ 8.

75. Plaintiff cannot recall the identity of any tenants, how long the tenants rented the unit for, and/or the amount of rent she collected for the rental unit. See Counsel's Aff. Ex. B-1, 42:22-43:12, 44:21-45:1, 97:22-25.

76. Over the course of at least the past five years, the primary resident in Plaintiff's in-law apartment is her son, Daniel, who stays in the rental unit periodically without paying rent and uses the apartment as his primary address. See Counsel's Aff. Ex. B-1, 30:8-31:8.

77. After the commencement of the Foreclosure Action, Plaintiff entered into a written lease with her grandson, Gregory Gill, for three months to obtain more income to qualify for the Forbearance Agreement. See Counsel's Aff. Ex. B-1, 34:2-38:8, 40:1-3.

78. The written lease with Gregory Gill is the only lease agreement that Plaintiff entered into with a tenant. See Counsel's Aff. Ex. B-1, 265:25-266:3.

79. Plaintiff does not recall how much rent her grandson paid during that time and she has not produced a copy of the written lease agreement to Wells Fargo. See

Counsel's Aff. Ex. B-1, 35:10-12; 40:4-41:19, 266:4-13; Counsel's Aff. Ex. B-6, 20; Counsel's Aff. ¶ 8.

80. Plaintiff has never rented the in-law rental unit to anyone other than a relative. See Counsel's Aff. Ex. B-1, 225:3:6.

81. Plaintiff has never applied for a Reverse Mortgage with Wells Fargo. See Counsel's Aff. Ex. B-1, 101:22-102:4, 166:13-16, 167:11-13, 271:14-24.

82. Plaintiff has not made a full payment on the Mortgage Loan or cured the outstanding balance due on the Mortgage Loan since her default more than six years ago in March 2010. See Penno Aff., ¶ 12; Counsel's Aff. Ex. B-3, No. 8-12; Counsel's Aff. Ex. B-4, p. 7, No. 8-12; Counsel's Aff. Ex. B-5, No. 9.

83. Plaintiff has also not produced any evidence of regarding the valuation of the Property either currently or for 2010. See Counsel's Aff. Ex, B, 272:7-9; Counsel's Aff. Ex. B-6, 20 Counsel's Aff. ¶ 8.

84. On March 11, 2013, Wells Fargo filed a motion for judgment of strict foreclosure in the Foreclosure Action. See Counsel's Aff. Ex. B-9, DN 113.

85. Plaintiff filed this action on March 19, 2013. See Henderson v. Wells Fargo Bank N.A., No. 13-cv-00378, DN 1 (the "Federal Court Docket").

86. On March 18, 2013, 1 day prior to filing this action, Plaintiff filed an answer and special defenses in the Foreclosure Action alleging claims nearly identical to those alleged in the current action. See Counsel's Aff. Ex. B-9, DN 115.5.

87. On March 31, 2014, Plaintiff amended her special defenses in the Foreclosure Action, but the claims remained nearly identical to those in this case. See Counsel's Aff. Ex. B-9, DN 152.

88. The Court granted Plaintiff leave to file a final amended complaint addressing any pleadings deficiencies. See Federal Court Docket, DN 41-42.

89. Plaintiff filed her final amended complaint (the "Complaint") on May 28, 2015. See Federal Court Docket, DN 48.

90. On August 31, 2015, the state court entered judgment of strict foreclosure in Wells Fargo's favor in the Foreclosure Action. See Counsel's Aff. Ex. B-9, DN 201.

91. Plaintiff subsequently appealed this decision to the Connecticut Appellate Court where it is currently pending. See Counsel's Aff. Ex. B-9, DN 206.

Respectfully submitted,
Wells Fargo Bank, N.A.,
by its attorney,

*/s/ Sean R. Higgins*

Sean R. Higgins (Bar No. ct28279)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Phone: 617-261-3100
Fax: 617-261-3175

Dated: September 29, 2016

CERTIFICATE OF SERVICE

I, Sean R. Higgins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: September 29, 2016 */s/ Sean R. Higgins*