UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENEVIEVE HENDERSON,<br>    *Plaintiff*,<br>    *v.*<br>WELLS FARGO BANK, N.A.,<br>    *Defendant.* | Civil No. 3:13cv378 (JBA)<br><br>February 21, 2017 |

### RULING ON DEFENDANT'S MOTION TO STRIKE

This suit, brought by pro se Plaintiff Genevieve Henderson ("Ms. Henderson") against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleges breach of contract, unfair trade practices, misrepresentation and infliction of emotional distress, arising out of Wells Fargo's foreclosure on Ms. Henderson's house.[1] (*See* Fourth Am. Compl. [Doc. # 48].) Wells Fargo now moves [Doc. # 106] to strike certain exhibits[2] to Plaintiff's Opposition [Doc. # 100] to Wells Fargo's Motion [Doc. # 94] for Summary Judgment and certain portions of Ms. Henderson's Affidavit [Doc. # 102]. For the following reasons, Defendant's Motion is granted in part and denied in part.

**I. Background**

The Court assumes the parties' familiarity with the underlying facts of the case. With respect to the instant motion, the following facts are relevant.

---

[1] Plaintiff's Complaint also alleges fraudulent, unlawful and/or abusive commencement of foreclosure action, but this count was previously dismissed. (*See* Ruling [Doc. # 64] on Defendant's Motion to Dismiss at 19.)

[2] Specifically, Defendant moves to strike a signed version of the Forbearance Agreement, discussed in detail below, and several news articles.

The Forbearance Agreement is central to at least one of Plaintiff's claims. In July 2015 Defendant filed its Motion [Doc. # 59] to Dismiss, attaching as an exhibit to its memorandum [Doc. # 60] a signed version of the Forbearance Agreement in which Plaintiff was required to make four monthly payments — three payments of $304.11 and a fourth payment of $47,556.82 (the "Four-Payment Agreement"). As part of her Opposition [Doc. # 61], Plaintiff filed an exhibit [Doc. # 62], which is an unsigned version of the Forbearance Agreement, requiring her to make only the first three payments (the "Three-Payment Agreement").

During discovery, Wells Fargo specifically requested that Ms. Henderson produce "the signed June 2011 Forbearance Agreement" in its First Request for Production of Documents in March 2016. (*See* Ex. B-6 (Defendant's Request for Production of Documents) to Counsel's Aff., ¶ 12.) Plaintiff did not serve any written responses or objections and simply produced a set of 88 documents, none of which was a copy of a signed forbearance agreement. (*See* Ex. B-1 (Henderson Tr.)) to Counsel's Aff. [Doc. # 94-4] at 219:21-25.) Wells Fargo renewed its request for the production of a signed forbearance agreement during Plaintiff's deposition on July 19, 2016. (*See id*. at 210:13-211:4; 220:16-19.)

Although Ms. Henderson agreed to review her files, she never produced a copy of the signed Three-Payment Agreement. (Def.'s Mot. to Strike at 4.) Wells Fargo filed for summary judgment [Doc. # 94] on September 19, 2016 and again submitted as an exhibit [Doc. # 94-3] a signed version of the Forbearance Agreement requiring four payments. On October 20, 2016 Plaintiff requested an extension [Doc. # 97] of time for submitting her Opposition to Defendant's Motion for Summary Judgment.[3] Plaintiff filed her Opposition on November 7, 2016, attaching as

---

[3] The Court granted the motion *nunc pro tunc*. (Order [Doc. # 103].)

an exhibit a signed Three-Payment Agreement. (*See* Ex. A-3 [Doc. # 100-3] to Pl.'s Opp'n. [Doc. # 100].) Defendant filed its reply [Doc. # 107] to Plaintiff's Opposition and its Motion to Strike [Doc. # 106] on December 2, 2016.

## II. Discussion[4]

### A. The Forbearance Agreement and Related Portions of Plaintiff's Affidavit

Defendant argues that Ex. A-3 to Plaintiff's Opposition Motion (the signed Three-Payment Forbearance Agreement) and any statements in Plaintiff's affidavit that rely on it must be precluded because (1) the Agreement is unauthenticated, (2) the existence of the signed version of the Agreement contradicts Plaintiff's prior deposition testimony, and (3) Plaintiff failed to disclose the signed Three-Payment Agreement in discovery. Only the third of these arguments has merit.

#### 1. *The Authentication of the Agreement*

Federal Rule of Evidence 901(a) provides that in order "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One way this can be done is through "[t]estimony of a [w]itness with [k]nowledge . . . that an item is what it is claimed to be."

---

[4] The Court recognizes that it has previously held that a motion to strike "is not the appropriate vehicle for contesting statements of fact in an opposing party's Local Rule 56 Statement or the evidence proffered in support." *Ricci v. Destefano*, No. 3:04 CV 1109 JBA, 2006 WL 2666081, at *1 (D. Conn. Sept. 15, 2006). However, in the interim, the Second Circuit has indicated that although "a court is obliged not to consider inadmissible evidence at the summary judgment stage, it remains in that court's discretion whether to strike the inadmissible portions or simply disregard them." *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010). Given the significance of the disputed evidence and for purposes of clarity, the Court will strike portions of the record it finds inadmissible.

Fed. R. Evid. 901(b)(1). Rule 901 "does not erect a particularly high hurdle" for authenticating evidence. *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.2001). "[T]he standard for authentication is one of reasonable likelihood, and is minimal." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks omitted). "Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity." *Id*. The proponent does not need to eliminate "all possibilities inconsistent with authenticity or to prove beyond any doubt that the evidence is what it purports to be." *Id*. (internal quotations omitted). The hurdle for authenticating evidence may be cleared by circumstantial evidence. *See Dhinsa*, 243 F.3d at 659.

Although Ms. Henderson failed to authenticate the signed Three-Payment Agreement in her initial affidavit, she remedied this defect by providing that authentication in her Opposition to Defendant's Motion to Strike. Given her *pro se* status, the Court accepts this supplemental affidavit as part of the record. Plaintiff's statement that "[t]he Forbearance Agreement that [she] produced . . . is a true copy of the original agreement that [she] mailed to Defendant in 2011" suffices to authenticate Plaintiff's exhibit. Therefore, Plaintiff has remedied her failure to initially authenticate the document.

### 2. *Contradiction of Plaintiff's Prior Testimony*

Wells Fargo contends that "[t]he sudden appearance of the 3-payment Agreement contradicts Plaintiff's prior deposition testimony that she likely does not have a copy of the 3-payment Agreement with her signature and that, if she had a copy, it would have been produced" to Defendant, and consequently should be struck. (Def.'s Mot. to Strike at 8-9.) However, Ms. Henderson's prior deposition testimony is not necessarily inconsistent with later producing the signed Three-Payment Agreement.

When first asked about the signed Three-Payment Agreement, Plaintiff testified that:

4

> Q: Do you have in your possession a copy or -- an original or a copy of a forbearance agreement with only three payments that has your signature on it?
> A: I couldn't have the original. I sent the original to Wells Fargo.
> Q: Do you have a copy?
> A: I don't know.
> Q: If you have a copy in your possession, will you agree to produce it to me?
> A: Of course I would.
> Q: I've already asked you to produce copies of documents in this case, and you told me you looked at some of your documents. Did you look for a copy of the special forbearance agreement when you were looking to produce documents to me?
> A: I looked for everything I could.
> Q: So if you had a copy of it, it likely would have been in the document production you made to me. Isn't that right?
> A: Probably, yes.
> Q: So if it's not in there, is it fair to say that you probably don't have a copy of it?
> A: No. I don't know. In other words, I really don't know.

(Henderson Tr. at 202:15-203:13.) Shortly thereafter, counsel for Defendant again questioned Plaintiff about the Agreement:

> Q: Mrs. Henderson, just to confirm you do not have in your possession a signed copy of the three-payment forbearance agreement. Is that right?
> A: I don't know. I think I told you that. I don't think so, but I don't know.
> Q: Well, let me make sure it's clear. I've asked for the [forbearance agreement] in discovery I think. It's a very important document, but I'll renew my request today. I'm going to ask you within two weeks to make a search of your records and see if you can locate a signed copy of the three-page agreement and produce it to me.
> A: I'll try because I'm working on the appellate.
> Q: Well, Mrs. Henderson, respectfully, I'm going to make that request, and if you think you need more time on it, we can talk about it, but its important that you confirm whether you have a copy of the signed three-page agreement in your file. You -- I just want to make sure your testimony is clear on this document we've marked as Exhibit 16.
> A: Yes. Okay.

5

(*Id.* at 210:8-211:4.)

Plaintiff's testimony is not patently contradicted by her subsequently submitting a signed copy of the Three-Payment Agreement with her Opposition to Summary Judgment. Plaintiff indicated that she was not sure if she had a copy of the Agreement, and while expressing doubt, never definitively stated that she did not have one. Rather, she stated that she had "looked for everything [she] could" while acknowledging that she had not yet produced a copy of the document. (*Id.* at 202:15-203:5.) Plaintiff subsequently agreed to again look for the document. The fact that Plaintiff did not produce the signed Agreement until the time she filed her Opposition Motion is not inconsistent with (a) her statement that she did not know whether she has a copy of the signed Three-Payment Agreement in her possession or (b) her promise to look for the document.

Therefore, Plaintiff has not "create[d] an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *See Hayes v. New York City Dept. of Corr.*, 84 F. 3d 614, 619 (2d Cir. 1996).

### 3. *The Failure to Disclose During Discovery*

Parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Parties "are under a continuing duty to supplement [their discovery responses] by providing documents that are responsive to the discovery propounded. The fact that discovery has closed has no bearing on [a][ ] duty to supplement under Rule 26(e)." *A & R Body Spec. &*

*Coll. Works, Inc. v. Prog. Cas. Ins. Co.*, No. 3:07CV929 WWE, 2014 WL 6474285, at *2 (D. Conn. Nov. 19, 2014) (citations omitted).

When "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[5] Although the language of the rule appears to mandate preclusion, the Second Circuit has determined that even when the court "finds that there is no substantial justification and the failure to disclose is not harmless" preclusion of the evidence is not required. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). Rather, a Court has "wide discretion in imposing sanctions under Rule 37." *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

In determining whether Plaintiff's failure to produce the Agreement in a timely manner was "substantially justified or is harmless" the Court considers: (1) the party's explanation for its failure to comply, (2) the importance of the evidence, (3) any prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence, and (4) the possibility of a

---

[5] The text of Rule 37(c)(1) provides in full:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c)(1).

continuance. *Charles v. Cty. of Nassau*, 116 F. Supp. 3d 107, 121 (E.D.N.Y. 2015) (citing *Design Strategy, Inc.*, 469 F.3d at 296). The Court addresses each factor in turn.

First, Plaintiff fails to provide a sufficient explanation for why she did not produce the signed Three-Payment Agreement during discovery. Plaintiff primarily relies on her incorrect assumption that "[b]ecause Defendant had control of the original agreement in 2011, and a copy in 2015 . . . Plaintiff had no obligation to produce it." (Pl.'s Opp'n. [Doc. # 108] to Def.'s Mot. to Strike at 9.) However, the Federal Rules do not afford a party the option of refusing to produce discovery on the basis that she believes that the requesting party is already in possession of the requested discovery. This is especially true where Plaintiff has been aware since Defendant filed its Motion to Dismiss on July 13, 2015 that Defendant claims it has in its possession only a signed Forbearance Agreement containing four payments. Moreover, counsel for Defendant made crystal clear how important it was for Plaintiff to produce the signed Three-Payment Agreement at her deposition July 19, 2016, giving her another opportunity to remedy her omission before Defendant prepared its Motion for Summary Judgment. Plaintiff's lack of any justifiable reason for her failure to produce the Agreement after being asked on multiple occasions weighs strongly in favor of preclusion.

Second, the signed Agreement is undoubtedly critical to Ms. Henderson's breach of contract claim. Plaintiff claims that Wells Fargo breached the Forbearance Agreement by not modifying her loan as promised after she performed her obligation under the contract by paying the three payments of $304.11. However, Wells Fargo contends that Plaintiff breached the contract first by failing to make the required fourth payment. *See David M. Somers & Associates, P.C., v. Busch*, 283 Conn. 396, 406 (2007) (A party cannot "recover damages under an agreement unless [she] has fully performed [her] own obligations under it."); *Automobile Ins. Co. v. Model Family*

8

*Laundries, Inc.*, 133 Conn. 433, 437 (1947) (holding same); *see also Weiss v. Smulders*, 313 Conn. 227, 263–64 (2014) ("Under contract law, it is well settled that a material breach by one party discharges the other party's subsequent duty to perform on the contract."). Thus, precluding Plaintiff's version of the Agreement will prove fatal to at least one of Plaintiff's claims. This factor weighs against preclusion.

Third, Defendant has been, and would continue to be, prejudiced by Plaintiff's extraordinarily late disclosure of the signed Three-Payment Agreement. Plaintiff argues that her omission was harmless because Defendant already has a copy of the Three-Payment Agreement, both because it has the original, and because she produced the unsigned version as an exhibit to her Motion to Dismiss. Since Defendant has never had a signed copy of the Three-Payment Agreement, Defendant was deprived of any opportunity to depose Plaintiff about it, only focusing on whether it indeed even existed. *See Doe v. Hicks,* No. 3:15CV01123(AVC), 2016 WL 5172814, at *10 (D. Conn. Sept. 21, 2016), *reconsideration denied,* No. 3:15CV01123(AVC), 2016 WL 6433828 (D. Conn. Oct. 31, 2016) (holding that defendant's failure to produce evidence in advance of plaintiff's deposition, particularly where defendant's counsel had it in his possession, is not harmless). Further, Wells Fargo invested time and resources developing a litigation strategy and drafting a comprehensive motion for summary judgment based upon the absence of any signed Three-Payment Agreement and will sustain substantial prejudice if Plaintiff's Exhibit is not stricken, and thus this factor weighs in favor of preclusion.

Lastly, "[w]hile a continuance is always theoretically possible, the closure of discovery weighs against a continuance*." Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 76 (E.D.N.Y. 2012). Plaintiff filed her case in 2013; discovery closed on August 3, 2016; and three months later Plaintiff

9

produced the long-requested document. This factor, too, weighs in favor of precluding Plaintiff's Exhibit A-3.

In sum, although the existence of a signed Three-Payment Agreement is a critical piece of evidence for Plaintiff, the Court finds that its preclusion is warranted under the circumstances of this case. Plaintiff's *pro se* status does not insulate her from the consequences of her utter failure to provide any legitimate justification for not having handed over a document, the importance of which she was clearly aware, despite it having been requested on numerous occasions.[6] Nor will the Court ignore the clear prejudice suffered by Defendant as a result of Plaintiff waiting until after Defendant had filed its Motion for Summary Judgment to finally produce a critical piece of evidence. Consequently, Defendant's Motion to Strike Plaintiff's Exhibit A-3 to her Motion for Summary Judgment is granted on this ground.

Additionally, because affidavits "used to support or oppose a motion must . . . set out facts that would be admissible in evidence," to the extent Plaintiff's Affidavit [Doc. # 102] relies on Exhibit A-3, the excluded signed Three-Payment Agreement, those statements must also be excluded from the record. Fed. R. Civ. P. 56(c)(1)(4); *see also Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("Affidavits submitted in support of or in opposition to the summary judgment motion . . . shall set forth such facts as would be admissible in evidence.").

---

[6] Even more troubling is that, if authentic, Plaintiff must have been in possession of this signed Three-Payment Agreement from the outset of the case, but simply waited to produce it until after Defendant had filed its Summary Judgment Motion. In fact, Plaintiff appears to admit in her Opposition that she did have a copy of the Exhibit, but simply failed to locate it until the time she filed her Opposition to Defendant's Motion for Summary Judgment. (*See* Pl.'s Opp'n to Def.'s Mot. to Strike at 8.)

Therefore, the Court will not consider paragraphs 13, 17 or 19B of Plaintiff's Affidavit.[7] The Court additionally will not consider other statements in Plaintiff's affidavit which rely upon the admissibility of the signed Three-Payment Agreement.[8]

---

[7] The respective paragraphs are quoted below:

> In June 2011, I entered into a Special Forbearance Agreement with Wells Fargo that I [sic] had to be reviewed, processed and approved for, which I was. I received a Forbearance Agreement that required that I make 3 monthly payments of $304.11, TIMELY and if I complete that step successfully, (which I did), I would start the Hamp program.

(Pl.'s Aff. ¶ 13.)

> It is quite evident that Wells Fargo is desperate to find an excuse/reason for the Court to throw out. the Agreement. . . . That outrageous payment appears to be just another "escape clause" in the event they need it (which they now do).. Additionally, para,, 5 of the Agreement clearly states "each payment MUST be remitted . ." However, after I completed my end of the bargain by make [sic] my 3 payments timely, it's incredible that they NEVER asked for that supposed 4th payment. It is quite evident that Wells Fargo needed to make it appear Plaintiff Breached the Agreement/contract so they could ESCAPE LIABILITY for their CONDUCT. The evidence supports the fact that "it's more likely than not" that the Agreement has 3 payments and not 4; and, it's Wells Fargo who Breached the contract, not me.

(Id. ¶ 17.)

> Regarding the BREACH OF CONTRACT claim; common sense and evidence supports that the Defendant and NOT the Plaintiff BREACHED its terms.. And, the evidence supports the fact that "it's more likely than not" that the Agreement has 3 payments and not 4

(Id. ¶ 19B.)

[8] This includes the following two statements which Defendant requested the Court strike on the ground that they were not made with personal knowledge, but that the Court instead will not consider because they depend upon the Three-Payment Agreement, which has been stricken:

> It was not until about 5-YEARS LATER, when they needed a reason for BREACHING our Agreement, that a 4th payment was mentioned.

(Id. ¶ 15.)

11

### B. The News Articles

Wells Fargo also asks that the Court strike what it terms "inflammatory news articles" (Exhibits A-10 and A-11 to Pl.'s Opp'n to Def.'s Mot. for Summary Judgment) "because they are not relevant to the current action and, even if they are deemed relevant, their probative value is substantially outweighed by their prejudicial effect" (Def.'s Mot. to Strike at 11-12.). Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Civ. P. 401. Here, Exhibits 10 and 11 do not meet either prong of the relevancy test because they involve matters entirely unrelated to the current action. Specifically, the attached news articles discuss instances of Wells Fargo's purported fraudulent conduct with regard to the opening of consumer accounts, foreclosures, loan modifications, and robo-signing. (*See* Exhibits A-10 and A-11 to Pl.'s Opp'n to Def.'s Mot. for Summary Judgment.) The articles do not, however, relate to Ms. Henderson's loan, Wells Fargo's foreclosure of her property, or the parties' loss mitigation efforts.

Moreover, any possible probative evidentiary value of Exhibits 10 and 11 is substantially outweighed by the risk of unfair prejudice where Plaintiff uses the exhibits to suggest that Wells Fargo acted improperly in this case based upon Defendant's other improper conduct portrayed by the negative press coverage. For these reasons, the Court strikes Exhibits 10 and 11.

### C. Conclusory Statements in Plaintiff's Affidavit

---

> That's just another MYTH (lie) of Wells Fargo and a clever attempt to find reason for the Court to throw out the Agreement because Wells Fargo did not live up to their bargain (BREACHED it), and is now trying to ESCAPE LIABILITY for it.

(*Id.* ¶ 16.)

Defendant argues that certain portions of Plaintiff's Affidavit cannot be considered by the Court because they rely on conclusory and generalized statements and are made without personal knowledge. (Def.'s Mot. to Strike at 13.) Pursuant to Fed. R. Civ. P. 56(c)(1) "an affidavit [opposing summary judgment] must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated." Statements not made in compliance with this Rule are inadmissible. *See e.g., United States v. Alessi,* 599 F.2d 513, 514 (2d Cir. 1979). Furthermore, "a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove" through conclusory statements that lack specifics. *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("conclusory allegations . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (internal quotation marks omitted).

The Court agrees with Defendant that the following paragraph must be stricken because it is clearly made without personal knowledge:

> It's evident Wells Fargo, NEVER intended to give me a modification of any kind, including the Reverse Mortgage, the Forbearance Agreement, nor a modification of any sort.

(Pl.'s Aff. ¶ 19A.) However, the remainder of the statements Defendant asks the Court to exclude are not so clearly made without personal knowledge that they should not be considered. However, several of them are conclusory allegations and opinions which may not be used to create an issue of material fact. *See Hicks*, 593 F.3d at 167. Still, the Court will not exclude those statements entirely on this Motion to Strike, but rather will assess the weight of the remaining statements accordingly when making its determination on the Summary Judgment Motion.[9]

---

[9] Those statements are the following:

13

III. Conclusion

For the foregoing reasons, Defendant's Motion to Strike is GRANTED in part and DENIED in part. Exhibit A-3 to Plaintiff's opposition to summary judgment is stricken from the record, as are those portions of Plaintiff's Affidavit which rely upon the admissibility of that Exhibit. Plaintiff's Exhibits A-10 and A-11 to her Opposition, and paragraph 19A of Plaintiff's Affidavit are also stricken, while the remainder of the identified statements in Plaintiff's Affidavit remain part of the summary judgment record.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 21st day of February 2017.

---

The process may be necessary at times, but it can also be ABUSED, which it was, to drag out the process, or make it appear the client is non-compliant with their requests, which could be useful as an excuse for denial.

(Pl.'s Aff. ¶ 18.)

Later on when I wrote to public officials about Wells' behavior, it was evidence [sic] Wells made a concerted effort to make it appear they were trying to help, when in fact, they worked in concert to cover up their behavior.

(*Id.* ¶ 9.)

Now, Defendant is attempting to use Rule 408 to take another try at throwing my case out. Defendant KNOWS VERY WELL that Plaintiff's Special Defenses and Counterclaim have been stricken and deemed stricken in the State Court.

(*Id.* ¶ 19C.)

"It is quite evident that Wells Fargo is desperate to find an excuse/reason for the Court to throw out the Agreement … That outrageous payment appears to be just another 'escape clause' in the event they need it (which they do)."

(*Id.* ¶ 17.)